UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **GLEN L. BRAWLEY, DMD,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v. ] | Case No.: 2:17-cv-01513-ACA |
| ] | |
| **NORTHWESTERN MUTUAL** ] | |
| **LIFE INSURANCE COMPANY,** ] | |
| **et al.,** ] | |
| ] | |
| **Defendants.** ] | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Glen Brawley, an orthodontist, had five disability income policies with Defendant Northwestern Mutual Life Insurance Company ("Northwestern"). (Doc. 1-1 at ¶¶ 7–12). After he severely injured his dominant hand in a brush saw accident, Dr. Brawley filed a claim under each of the policies. (*Id.* at ¶¶ 19–25, 34). Until January 1, 2015, Northwestern paid Dr. Brawley disability benefits under all five policies, but in February 2015, it reassessed his condition and discontinued all disability payments. (*Id.* at ¶¶ 34–40). Dr. Brawley timely filed an appeal of the denial, which Northwestern denied. (*Id.* at ¶¶ 41–42). In March 2016, Dr. Brawley submitted a second claim for disability benefits. (Doc. 1-1 at ¶ 43). After its review of the second request, Northwestern determined it was

"unable to re-open [Dr. Brawley's] prior claim or approve a new claim." (Doc. 32-4). This lawsuit followed.

Currently pending before the court is Northwestern's motion for partial summary judgment. (Doc. 27). Northwestern argues that Counts II through V of Dr. Brawley's complaint are time-barred under either Alabama's twenty-year rule of repose or the applicable statute of limitations. (Doc. 28 at 6). For the reasons explained below, the court **GRANTS IN PART AND DENIES IN PART** Northwestern's motion.

I.  STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views the evidence in the light most favorable to the non-moving party. *Baas v. Fewless*, 886 F.3d 1088, 1091 (11th Cir. 2018).

II.  FACTUAL BACKGROUND

Dr. Brawley purchased five disability income policies from Northwestern. The first policy was issued on April 10, 1981 (the "1981 Policy"). (Doc. 1-1 at ¶ 7). The second policy was issued on November 10, 1987 (the "1987 Policy"). (*Id.* at ¶ 11). The third policy was issued on January 10, 1990 (the "1990 Policy"). (*Id.* at ¶ 12). The fourth and fifth policies were issued on March 1, 2002

(collectively, the "2002 Policies"). (*Id.* at ¶ 14). All five of the policies remained in effect at all relevant times. (Doc. 1-1 at ¶¶ 7, 11, 12, 14).

Dr. Brawley did not actually read any of the disability policies; he "looked" at the 1981, 1987, and 1990 Policies "close enough to verify the premium and benefits were as represented" and relied on the Northwestern agent's representations about the terms of the 2002 Policies. (Doc. 1-1 at ¶ 15; Doc. 11 at 12–13). Based on discussions he had with the Northwestern agent who sold him the policies, Dr. Brawley believed that the 1987 Policy provided "true 'own occupation'" protection in the event he "could not perform, on a full-time basis, the primary activities of his specific specialty (orthodontics)." (Doc. 1-1 at ¶¶ 9–11). He believed the 1990 Policy was "virtually identical" to the 1981 and 1987 Policies (*id.* at ¶ 12), and when he purchased the 2002 Policies, he understood them to be "essentially the same as the three previous policies" (*id.* at ¶ 15). Dr. Brawley did not compare the language in the 2002 Policies to the three earlier policies. (*Id.*).

In 2013, after a severe injury to his dominant hand impacted his ability to work, Dr. Brawley applied for disability benefits under all five policies. (Doc. 1-1 at ¶¶ 19, 34). Northwestern approved the claim, subject to continuing proof of disability requirements, and paid Dr. Brawley monthly disability benefits under the policies through January 2015. (*See id.* at ¶¶ 34, 35). In February 2015,

Northwestern denied Dr. Brawley's claim for disability benefits beyond what had already been paid. (*Id.* at 40).

In February 2016, Dr. Brawley sold his orthodontics practice and stopped practicing. (*Id.* at ¶¶ 43, 47). He then submitted, in March 2016, a second claim based on his updated employment status and included additional medical records regarding a condition in his right elbow. (Doc. 1-1 at ¶ 43).

In April 2016, Northwestern sent Dr. Brawley a letter acknowledging receipt of the claim and informing him that Northwestern would "be re-evaluating [his] claim from [the] original submission in 2013 to see if [it] can change that decision and, if not, [determine] whether [it] can establish a current period of disability." (Doc. 32-3). In June 2016, Northwestern concluded its "review of [Dr. Brawley's] claim both with regard to [his] current limitations and possible limitations continuing from [the] original claim." (Doc. 32-4). Based on its review, Northwestern determined that it was "unable to either re-open [Dr. Brawley's] prior claim or approve a new claim." (*Id.*).

Dr. Brawley sued Northwestern and two insurance agents in state court, asserting various state law claims. (Doc. 1-1). The Defendants removed the case to this court based on diversity jurisdiction. (Doc. 1 at ¶ 6). The court (Hopkins, J.) dismissed the two insurance agents as fraudulently joined, concluding that the

rule of repose barred some of the claims against them and the statute of limitations barred the rest. (Doc. 19 at 2–3, 36–37).

The only remaining Defendant is Northwestern. Count I alleges Northwestern breached the terms and provisions of all five policies issued to Dr. Brawley. (Doc. 1-1 at ¶ 51). Counts II, III, and IV assert claims with respect to the 1987, 1990, and 2002 Policies. (*Id.* at ¶¶ 54, 58, 61). Count V alleges Northwestern twice denied Dr. Brawley's disability claims in bad faith. (*Id.* at ¶ 69).

## III. DISCUSSION

Northwestern's motion for partial summary judgment seeks to dispose of Counts II through V of Dr. Brawley's complaint. Northwestern argues that claims asserted with respect to the 1987 and 1990 Policies are barred by Alabama's Rule of Repose. Northwestern alleges claims made pursuant to the 2002 Policies, and those alleging a bad faith denial of benefits, are barred by the statute of limitations.

### A. *Alabama's Rule of Repose Bars Dr. Brawley's Fraud and Negligence Claims Against Northwestern Under the 1987 and 1990 Policies*

Northwestern moves for summary judgment on Counts II, III, and IV to the extent they arise from the 1987 and 1990 Policies, on the basis that the rule of repose bars those claims. (Doc. 28 at 6–9).

Under Alabama law, the common-law rule of repose "bars actions that have not been commenced within 20 years." *Owens-Illinois, Inc. v. Wells*, 50 So. 3d

413, 416 (Ala. 2010) (quoting *Tierce v. Ellis*, 624 So. 2d 553, 554 (Ala. 1993)). "The rule of repose begins running on a claim as soon as all of the essential elements of that claim coexist so that the plaintiff could validly file suit." *Am. Gen. Life and Acc. Ins. Co. v. Underwood*, 886 So. 2d 807, 812 (Ala. 2004). Because Dr. Brawley's alleged injury resulted from the payment of premiums for an insurance policy, "the rule of repose began running . . . as soon as [Dr. Brawley] paid the first premium for [each] policy because that payment supplied the last essential element necessary for all essential elements of the particular claim to coexist so that [he] could file suit." *Id.* at 813.

Dr. Brawley began paying premiums for the 1987 Policy on November 10, 1987 (doc. 29-1 at 24), and for the 1990 Policy on January 10, 1990 (*id.* at 47). But, he did not file his state court complaint until August 1, 2017. (Doc. 1 at 1, ¶ 8). Because more than twenty years elapsed between the payment of the first premium under each policy and the filing of this lawsuit, the court finds that the rule of repose bars Dr. Brawley's negligence and fraud based claims arising from the 1987 and 1990 Policies.

> B. *Alabama's Two-Year Statute of Limitations Bars Dr. Brawley's Fraud Claims Against Northwestern Under the 2002 Policies*

Northwestern seeks summary judgment on Counts II and IV as they relate to the 2002 Policies, on the basis that Alabama's two-year statute of limitations bars those claims. (Doc. 28 at 9–17).

Under Alabama law, claims for fraud and suppression are subject to a two-year statute of limitations. Ala. Code §§ 6–2–38, 6–2–3. A fraud claim accrues, and the running of the statutory limitations period commences, "upon the earlier of: (1) actual discovery of the alleged fraud; or (2) receipt of a document or contract alerting the plaintiff to the possibility of fraud, if the plaintiff could have read and understood such document and chose to ignore its written terms." *Owens*, 289 F. Supp. 2d at 1325 (citing *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 421 (Ala. 1997)).

Dr. Brawley admits that he received copies of the 2002 Policies in March 2002 (doc. 1-1 at ¶ 15), but argues that the limitations period should run from the date he discovered the fraud and not from the date he received the policies (doc. 18 at 4, ¶ 5). Although he agrees that the earlier date typically triggers the running of the statute of limitations, Dr. Brawley contends that under an exception created by Alabama Supreme Court precedent, the statute of limitations runs from the time he discovered the alleged fraud because he had a "special relationship" with the Northwestern agent. (*Id.*) (citing *Potter v. First Real Est. Co., Inc.*, 844 So. 2d 540, 551 (Ala. 2002)).

Dr. Brawley's argument is unavailing. In *Potter*, a real estate agent represented both the purchaser and seller in a real estate transaction. The agent told the plaintiff that she represented him "as much as she represented the seller."

7

*Potter*, 844 So. 2d at 543. At the real estate closing, the agent assured the plaintiff that a document presented at the closing was the same as an almost illegible document that she had previously presented. *Id.* at 551. Because the real estate agent represented the plaintiff's interests, the Alabama Supreme Court found a special relationship between the plaintiff and the agent existed that made it reasonable for the plaintiff to rely on the agent's representations of what the document contained. *Id*. As a result, the Alabama Supreme Court held that the statute of limitations began running when the plaintiff discovered the fraud instead of when he received the document. *Id.*

The *Potter* decision is distinguishable for two reasons. First, unlike in *Potter*, in this case the agent who allegedly made misrepresentations regarding the terms of the 2002 Policies was Northwestern's agent, not Dr. Brawley's agent. And second, Dr. Brawley has not alleged or presented evidence that he could not read or understand the language of the Policies. Given these distinctions, the *Potter* decision does not apply in this case. Consequently, the statute began to run in March 2002, more than two years before he filed this case in 2017, and his fraud claims based on the 2002 Policies are time-barred.

> C. *Alabama's Two-Year Statute of Limitations Bars Dr. Brawley's Negligent and/or Wanton Training and Supervision Claims Against Northwestern Under the 2002 Policies*

Northwestern seeks summary judgment on Count III on the basis that Alabama's two-year statute of limitations for negligence and wantonness actions bars the claim. (Doc. 28 at 22–24).

Dr. Brawley's negligent and/or wanton training and supervision claims are subject to a two-year statute of limitations. Ala. Code § 6–2–38; *Booker v. United Am. Ins. Co.*, 700 So. 2d 1333, 1339 (Ala. 1997) (applying a "two-year limitations period for claims alleging liability for negligence, whether the liability is direct or based upon the doctrine of *respondeat superior*"). Under Alabama law, it is well settled that a "negligence [and/or wantonness] cause of action accrues when the plaintiff can first maintain the action, regardless of whether the full amount of damage is apparent at the time of the first injury." *Henson v. Celtic Life Insurance Co.*, 621 So. 2d 1268, 1271 (Ala. 1993).

In this case, Dr. Brawley's negligent and/or wantonness claims stem from Northwestern's sales training and supervision for insurance agents. (Doc. 1-1 at ¶ 58). Specifically, Dr. Brawley alleges that the agents "did not know how to truthfully represent the features of [the disability] policies to potential insureds." (*Id.*). The complaint alleges that a Northwestern agent described the scope of coverage around the time Dr. Brawley purchased a policy. The last time Dr.

9

Brawley purchased a Northwestern policy was in 2002. Thus, any alleged negligence or wantonness on the part of Northwestern occurred, at the latest, on March 1, 2002, when Dr. Brawley purchased the 2002 Policies. Because Dr. Brawley filed his complaint fifteen years after his claim accrued, the statute of limitations bars Dr. Brawley's negligent and/or wanton supervision claims.

D.     *Dr. Brawley's Bad Faith Claims*

Northwestern seeks summary judgment on Count V, in which Dr. Brawley asserts bad faith claims, on the basis that the statute of limitations bars that claim. (Doc. 28 at 24–26).

Under Alabama law, the statute of limitations for bad faith claims is two years, Ala. Code § 6–2–38(1), and begins to run "upon the event of the bad faith refusal, or upon the knowledge of facts which would reasonably lead the insured to a discovery of the bad faith refusal." *Jones v. Alfa Mut. Ins. Co.*, 1 So. 3d 23, 30 (Ala. 2008) (quoting *Safeco Ins. Co. of Am. v. Sims*, 435 So. 2d 1219, 1222 (Ala. 1983)). Generally, a letter denying insurance coverage is sufficient to "put a reasonable mind on notice." *Farmers & Merchants Bank v. Home Ins. Co.*, 514 So. 2d 825, 831–32 (Ala. 1987).

In Count V, Dr. Brawley asserts two bad faith claims: one arising from Northwestern's February 2015 denial of benefits and one arising from its June 2016 denial of benefits. The statute of limitations bars the claim arising from the

February 2015 denial of benefits because Dr. Brawley filed his complaint in August 2017, more than two years after that denial. *See Farmers & Merchants Bank,* 514 So. 2d at 832.

But, the statute of limitations does not bar the bad faith claim arising from Northwestern's June 2016 denial of benefits. In March 2016, Dr. Brawley made a second claim under all five policies, attaching to his claim additional evidence in support. (Doc. 32-2; *see* Doc. 32-3). Northwestern requested updated medical records and evaluated the claim "to see if [it could] change that decision [on the 2013 Claim] **and, if not, . . . whether [it was able to] establish a current period of disability**." (Doc. 32-3) (emphasis added). After reviewing the information, Northwestern wrote Dr. Brawley in June 2016, stating that it had reviewed the information "**both** with regard to current limitations **and** possible limitations continuing from [his] original claim" (doc. 32-4) (emphasis added), but that it was "unable to **either** re-open [his] prior claim **or** approve a new claim" (*id.*) (emphasis added).

Taken in the light most favorable to Dr. Brawley, the June 2016 letter is a denial of benefits. By its terms, the letter clearly and unambiguously states that it will "not approve" a new claim. (*Id.*). A denial of insurance benefits is, by definition, a "rejection of an application for benefits." *Denial*, Black's Law Dictionary (10th ed. 2014). Thus, Northwestern's decision to not approve a new

claim is the same as denying a new claim. Because Dr. Brawley filed his lawsuit within two years of Northwestern's June 2016 denial of his second claim, the statute of limitations does not bar the bad faith claim based on that denial.

## IV. CONCLUSION

The court **GRANTS IN PART** and **DENIES IN PART** Northwestern's motion for summary judgment. The court **GRANTS** Northwestern's motion for summary judgment on Counts II through IV of the complaint, **GRANTS IN PART** Northwestern's motion for summary judgment on Count V of the complaint to the extent the count asserts a claim arising from Northwestern's February 2015 denial of benefits, and **DENIES IN PART** Northwestern's motion for summary judgment on Count V of the complaint to the extent the count asserts a claim arising from Northwestern's June 2016 denial of benefits.

**DONE** and **ORDERED** this December 21, 2018.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE